**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Linda Schultz,                              Civ. No. 08-550 (RHK/JJK)

        Plaintiff,

v.

Commissioner of Social Security,            **REPORT AND RECOMMENDATION**
                                            **ON CROSS-MOTIONS FOR**
        Defendant.              **SUMMARY JUDGMENT**

---

Gerald S. Weinrich, Weinrich Law Office, Counsel for Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, Counsel for Defendant.

---

### INTRODUCTION

Plaintiff Linda Schultz appeals the unfavorable decision of Defendant

Michael J. Astrue, the Commissioner of the Social Security Administration ("the

Commissioner"), denying her application for disability insurance benefits.  This

matter is before this Court for a Report and Recommendation to the District Court

on the parties' cross-motions for summary judgment.  *See* 28 U.S.C. § 636(b)(1)

and Local Rule 72.1.  For the reasons stated below, this Court recommends that

Plaintiff's Motion for Summary Judgment (Doc. No. 11) be denied and the

Commissioner's Motion for Summary Judgment (Doc. No. 14) be granted.

## BACKGROUND

### I.    Procedural History

On November 19, 2004, Plaintiff filed an Application for Disability

Insurance Benefits.  (Doc. No. 7, Administrative Record Transcript ("Tr.") 70-73.)

Plaintiff alleged that she became unable to work on April 29, 2004, because of a

disabling condition.  (Tr. 70.)  The Social Security Administration ("SSA") denied

Plaintiff's claim initially on February 14, 2005.  (Tr. 48.)  Plaintiff requested

reconsideration of the initial decision (Tr. 46), and on August 22, 2005, following

reconsideration, the SSA again denied her claim.  (Tr. 43-44.)  Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ") to appeal the

denial of her claim.  (Tr. 38.)  Plaintiff appeared before the ALJ and testified at

the hearing on April 2, 2007, in Rochester, Minnesota.  (Tr. 12, 211-21, 228-31.)

The ALJ issued a Decision on May 23, 2007, denying Plaintiff's

applications for benefits.  (Tr. 12-19.)  Plaintiff filed a Request for Review of the

ALJ's decision with the SSA Appeals Council.  (Tr. 8.)  On January 10, 2008, the

Appeals Council denied Plaintiff's request for review, thereby making the ALJ's

decision the final decision of the Commissioner of Social Security in Plaintiff's

case.  (Tr. 4-6.)  *See* 20 C.F.R. §§ 404.981, 416.1481.  On February 28, 2008,

Plaintiff filed the instant action with this Court.  (Doc. No. 1.)  The parties

thereafter filed their cross-motions for summary judgment.  (*See* Doc. Nos. 11,

14.)

II.    **Factual Background and Medical History**

Plaintiff was born on March 27, 1951, and at the time of the ALJ's decision, was 56 years old.  (Tr. 12-19, 20.)  Plaintiff has a twelfth-grade education. (Tr. 114.)  Prior to becoming unable to work, Plaintiff worked as an office manager at a tile store, as the manager of an RV-park, as a claims clerk at a retail store, and as a cashier and customer service representative at a retail store.  (Tr. 110, 116-18, 211-16.)

Plaintiff has a long history of health troubles.  At the age of five, Plaintiff had surgery to have a Baker's cyst in her left knee removed.  (Tr. 85, 172.)  At the age of 21, she suffered a broken left ankle, and three years later was involved in a snowmobile accident injuring her left knee.  (Tr. 85, 172.)  The left knee injury resulted in Plaintiff's development of relatively severe osteoarthritis. (Tr. 85, 172, 206, 221.)  Plaintiff tends to experience the left knee pain associated with that injury primarily in the patello-femoral region of the knee. (Tr. 172.)  Plaintiff developed a bone spur in her left ankle after she was struck by a shopping cart impacting the left Achilles; the bone spur causes pain in her Achilles' tendon insertion.  (Tr. 85, 172.)  Plaintiff suffers from sciatica in her left leg, making it difficult for her to stand for any extended period of time.  (Tr. 85, 172.)  In 1993, Plaintiff was injured in an accident at work that resulted in damage to her spine and three broken ribs. (Tr. 84, 86.)  According to Plaintiff's statements, that rib injury, along with her lower back pain, still causes her difficulty sitting for more than 10 minutes at a time.  (Tr. 172-73.)  Plaintiff has

also been diagnosed with obesity and fibromyalgia.  (Tr. 221.)  In addition, X-rays have indicated that Plaintiff suffers from a degenerative disc disease known as diffuse idiopathic hyperostosis ("DISH").  (Tr. 212, 221.)

In May 2004, Plaintiff saw Dr. Mark Stenberg at Olmsted Medical Center for an annual physical examination.  (Tr. 152.)  She reported left leg pain and left knee discomfort, and she also explained that she managed to lose some weight on the "Atkins diet" but felt it was too severe for her.  (*Id.*)  Dr. Stenberg assessed left leg and SI-joint pain, knee pain, fibromyalgia-like syndrome related to Achilles tendinitis and left heel spur syndrome, and other health issues.  (Tr. 154.)

In June 2004, at Brookview Chiropractic Clinic, Plaintiff saw David Tucker, who requested that Plaintiff see Dr. James Smith at Olmsted Medical Center. (Tr. 167.)  Tucker reported that Plaintiff was experiencing radiating pain in her left leg from the gluteal area into the thigh and calf, left Achilles tendon pain, and "uncontrollable give-way bladder incontinence . . . on approximately a weekly basis."  (*Id.*)

In July 2004, Plaintiff visited Olmsted Medical Center for pain in multiple locations in the back and left leg.  (Tr. 149.)  Dr. James Smith indicated that back surgery would likely worsen Plaintiff's condition.  (Tr. 151.)  Given Plaintiff's diagnosis of fibromyalgia, Dr. Smith stated that it was unclear the extent to which "helping the left knee" would help Plaintiff's overall symptoms.  (*Id.*)  When offered an antidepressant medication, Plaintiff stated that she had been offered Prozac in the past, but declined.  (*Id.*)  Plaintiff indicated that she wanted to be

referred to orthopedic surgery for her left knee.  (*Id.*)

In August 2004, Dr. Robert Jones saw Plaintiff at Olmsted Medical Center. (Tr. 145.)  Dr. Jones reported that he could find no single diagnosis to explain all of Plaintiff's symptoms, but made the following diagnoses: (1) left leg sciatica; (2) left patellofemoral chondromalacia with osteoarthritis; (3) left achilles insertional tendinitis with bone spur; and (4) fibromyalgia.  (Tr. 146-47.)

On January 15, 2005, Plaintiff again saw David Tucker at Brookview Chiropractic Clinic.  (Tr. 165.)  At the time of Tucker's report he did not know Plaintiff's current condition, but based on her last medical findings Tucker estimated her "functional status."  (*Id.*)  Tucker stated that she should be limited to "sedentary duty status with disabling conditions of lumbar disc protrusion with sciatica."  (*Id.*)  He also noted her knee pain, left heel spur, fibromyalgia, and DISH diagnoses.  (Tr. 165-66.)  Tucker characterized "sedentary work status" as "lifting 10 pounds maximum and occasionally lifting and/or carryings such articles as dockets, ledgers, and small tools."  (Tr. 166.)  He indicated that she was unable to sit or stand for a prolonged period, she should not bend or stoop at the waist, she not be required to do tasks with repetitive overhead reaching, and she should have no static head or neck positions.  (*Id.*)

On August 10, 2005, Dr. Ward R. Jankus conducted a consultative examination of Plaintiff.  (Tr. 172.)  Dr. Jankus indicated that Plaintiff was significantly overweight, suffered from left leg sciatica, had a history of  DISH involving the spine, had left knee pain, left Achilles insertion pain, and a previous

diagnosis of fibromyalgia.  (Tr. 174.)  Dr. Jankus reported the following:

> After watching her maneuver today with the limp, stiffness at the
> back, knee, etc., my impression is that she is probably limited to
> 25% or so out of an 8 hour period nowadays on her feet and the rest
> off her feet.  I don't see that she is going to be able to do kneeling
> and squatting because she would have such a hard time getting
> back up on her feet.  I think the [use of a] cane is necessary for
> longer distance community mobility because of the knee and the
> back issues although not required for short distance at her current
> living quarters.

(Tr. 174-75.)

On August 18, 2005, a Medical Consultant conducted a Physical Residual

Functional Capacity Assessment ("RFC") for Plaintiff.  (Tr. 177-84.)  The RFC

permitted Plaintiff to occasionally lift or carry 20 pounds.  The RFC also indicated

that Plaintiff could frequently lift or carry 10 pounds, stand or walk with normal

breaks for at least 2 hours in an 8-hour work day, and sit with normal breaks for

about 6 hours in an 8-hour work day.  (Tr. 178.)  These conclusions were based

on the following evidence before the Medical Consultant:

> [Plaintiff] has multiple complaints.  Most recent treatment has
> centered around chiropractic care.  She does find periodic
> symptomatic releif [sic] from these treatments.  Recent orthopedic
> exam reveals severe osteoarthritis changes of her left knee.  There
> is patello-femoral pain at this point with some ristrictions [sic] in
> [range of motion].  Xrays also show [degenerative disc disease]
> throughout the lumber spine with disc space narrowing.  [Range of
> motion] is somewhat restricted on forward flex, more so on
> extension.  RFC reflects these findings along with consideration
> given to [Plaintiff's] complaints of pain.

(Tr. 178.)  The RFC also indicates that Plaintiff can only occasionally stoop,

kneel, crouch, or crawl at work.  (Tr. 179.)  The RFC further provides that

(1) Plaintiff's symptoms are attributable to a medically determinable impairment; (2) the severity or duration of Plaintiff's symptoms were not disproportionate to the expected severity or expected duration on the basis of her medically determinable impairments; and (3) the severity of the symptoms and their alleged effect on functions were consistent with the medical and nonmedical evidence. (Tr. 182.)  The consultant completing the RFC reported that he did not have a treating or examining source's statement regarding Plaintiff's physical capacities in the file at the time he completed the RFC.  (Tr. 183.)

On September 13, 2005, Dr. Robert Jones submitted a "Certificate of Return to Work or School" after seeing Plaintiff.  (Tr. 187.)  In the September 13 certificate Dr. Jonees cleared Plaintiff for "sedentary work only, no prolonged standing" and prohibited Plaintiff from doing any lifting over 20 pounds.  (*Id.*)  Dr. Jones completed another certificate on October 25, 2005.  (Tr. 186.)  In the October 25 certificate, Dr. Jones imposed restricted Plaintiff to sedentary work, sitting or standing for periods of no more than 30 minutes, and no lifting over 20 pounds.  (*Id.*)  Dr. Jones also recommended that Plaintiff be allowed to elevate her legs on a regular basis while at work.  (*Id.*)  The certificate explained that the basis for these restrictions were Plaintiff's left knee pain, sciatica, fibromyalgia, and heel pain.

On March 9, 2006, Dr. Jones completed a medical questionnaire related to Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting.  (Tr. 190-93.)  Dr. Jones's responses to this questionnaire indicate

that it was his medical opinion that Plaintiff could not lift and carry more than 20

pounds on an occasional basis, could not lift and carry more than 10 pounds on a

frequent basis, and could not stand and walk with normal breaks more than 2

hours in an 8-hour work day.  (Tr. 190.)  The responses also reveal that

Dr. Jones did not think there was a limitation on Plaintiff's "maximum ability to sit

(with normal breaks) during an 8-hour day," but that Plaintiff needed to change

positions every 15 minutes while sitting.  (Tr. 190.)  Dr. Jones indicated that

Plaintiff needed the opportunity to shift at will from sitting or standing/walking but

that she would not need to lie down at unpredictable intervals during a work shift.

(Tr. 191.)  Notably, Dr. Jones's responses indicate that Plaintiff was required to

"walk around" every 90 minutes, but that the duration of each of these walks

must last 0 minutes.  (Tr. 191.)  The limitations Dr. Jones described in the

questionnaire were supported by his medical findings that Plaintiff experienced

severe pain in her left knee from prolonged standing and that Plaintiff has

osteoarthritis.  (Tr. 191.)  Finally, Dr. Jones indicated on the questionnaire that,

on average, he anticipated Plaintiff would need to be absent from work three

times a month.  (Tr. 192.)

## III.   Testimony at Administrative Hearing

### A.   Plaintiff's Testimony

Plaintiff testified that her last job was as a customer service representative

at Sam's Club.  (Tr. 212.)  She testified that, after holding the position for two

years, she had no choice but to leave the job because her sciatica prevented her

from standing on concrete and her "back condition had degenerated to the point where [she] couldn't sit either." (Tr. 212.) She testified that she had been unable to sit for several years at the time of the hearing due to an accident at Sam's Club in 1993 in which she broke three ribs and strained her back. (Tr. 212.)

Plaintiff testified that prior to her position as a customer sales representative at Sam's Club she worked as a "front-end supervisor" within the same company. She described this position as "very physical." Not able to continue in that position, Plaintiff said that she worked as an inventory coordinator, which required her to keep track of the inventory for the store. Plaintiff testified that she had to leave that position because it involved pulling merchandise. (Tr. 213.)

Plaintiff testified that she was also unable to continue in her position as a claims clerk at Sam's Club due to her physical impairments. She described the duties of this job as involving "some sitting, some paperwork, some computer work, but a lot of it was pulling merchandise and loading it back in the loading area . . . which was too hard for [her]." She further testified that she was able to sit for about 20 minutes at a time while doing her job as a claims clerk. (Tr. 213.)

Plaintiff further testified that, when she stopped working in April 2004, she was having problems sitting, and her impairments had progressed to a point where she was forced to quit a position she held at Sam's Club for only one day. (Tr. 214-15.) She further explained that sitting aggravated her back pain and was made more difficult by the injuries to her ribs. (Tr. 216.)

Plaintiff explained that she and her husband now live in a recreational vehicle because they were forced to sell their home when her condition prevented her from being able to take care of their house.  (Tr. 216.)  Also, due to her fibromyalgia, she claims it was not possible for them to live in cold climates. In order to follow warm weather in the winter for the past several years, they have traveled between a farm in Byron, Minnesota, and either Texas or California.  (Tr. 216-17.)

When asked to describe her typical day since she stopped working, Plaintiff testified as follows:

> I get up and shower.  That helps give me some relief for a few minutes. . . .  [I]f my husband's home, I try to make breakfast or we have cereal.  And the rest of the day, it depends on how I feel.  I can either do a couple loads of laundry, or I can do the grocery shopping.  I can only do the grocery shopping with a motorized cart. I can't walk a grocery store. I can't do both in the same day.  It's all about pain management at this point.

(Tr. 216.)  Plaintiff also testified that, on occasion, her impairments prevent her from doing household chores alone, requiring the assistance of her husband. (Tr. 219.)  She also explained that she has difficulty showering on her own.  (Tr. 220.)  Plaintiff said that, approximately twice a week, she would have a "bad day," when she is able to get out of bed and go to the couch, but that she doesn't move from the couch and experiences so much pain she is unable to lift her hand to comb her hair.  (Tr. 220.)

## B.   Medical Expert Testimony

At the April 2007 hearing, Dr. Andrew Steiner explained, after reviewing

the record, that Plaintiff has undergone treatment for knee pain, and that the X-rays taken in August 2005 showed relatively severe osteoarthritis.  (Tr. 221.) Dr. Steiner testified that Plaintiff has received treatment for low back pain. (Tr. 221.)  He said that Plaintiff's "X-rays have shown some degenerative disc disease changes and osteoarthritis . . . [but that he] didn't see any evidence in this record of fusion, nor [was] there any ongoing neurological deficit."  (Tr. 221.) Dr. Steiner testified that he saw no evidence of old rib injuries, but noted that Plaintiff was diagnosed with both obesity and fibromyalgia.  (Tr. 221.)  With regard to the fibromyalgia diagnosis, Dr. Steiner testified that he "did not see identification of the usual tender points establishing that diagnosis."  (Tr. 221-22.)

Dr. Steiner testified that none of the impairments he saw in the record meet or equal any of the listings of impairments.  (Tr. 222.)  However, Dr. Steiner testified that as of August 2005, when the severe arthritis of the knee was established, the record would support a sedentary limitation with regard to time Plaintiff was required to spend on her feet.  (Tr. 222.)  Dr. Steiner also said that the record would support limitations on bending and twisting as well as limiting Plaintiff to only occasional kneeling, crouching, and crawling.  (Tr. 222.)  Dr. Steiner specifically disagreed with Dr. Jones's October 25, 2005 recommendation that Plaintiff be allowed to periodically raise her leg because Dr. Steiner "didn't see a medical condition in this record . . . which would mandate raising her legs on a regular basis at work."  (Tr. 223.)  Dr. Steiner also disagreed with Dr. Jones's conclusion that Plaintiff would require an option

allowing her to move at will from sitting to standing because he saw nothing in the record to mandate such an option.  (*Id.*)  Dr. Steiner further testified that changes in Plaintiff's DISH symptoms might support a brief change of position on an hourly basis.  *(Id.)*

### C.   Vocational Expert Testimony

Frank Samalska testified at the April 2007 hearing as a vocational expert.[1] (Tr. 224-28.)  The ALJ presented Samalska with two hypothetical questions to determine whether Plaintiff would be capable of performing the duties of her positions in her past employment.  (Tr. 224-26.)  In the first hypothetical, the ALJ asked Samalska whether someone with a 12th-grade education, closely approaching advanced age as defined by the Social Security regulations, with impairments of osteoarthritis in the left knee, DISH, obesity, fibromyalgia, a heal spur, and an eventual hernia were capable of performing any of Plaintiff's past work.  (Tr. 224.)  The ALJ further clarified that the limitations of the job would include the following: lifting 20 pounds only occasionally; lifting 10 pounds frequently; the ability to stand and walk for 6 hours out of an 8-hour day; occasional climbing of stairs, ramps, or ladders; no climbing of ropes or scaffolds; occasional stooping and kneeling; no crouching or crawling; and limited balancing.  (Tr. 224.)  Samalska responded that the hypothetical person could do

---

[1]     On March 29, 2007, Samalska conducted a vocational history, or past relevant work summary.  (Tr. 131.)  Samalska testified at the hearing that no changes to the vocational history were necessary based on the testimony.  (Tr. 224.)

all of Plaintiff's past relevant work as Plaintiff performed it, except for Plaintiff's

position as a cashier supervisor.  (Tr. 225.)

The ALJ's second hypothetical asked Samalska whether any of Plaintiff's

past work would be possible considering the same hypothetical woman, but

limiting her to:

> sedentary work as defined by the Social Security regulations,
> meaning . . . lifting only ten pounds occasionally and frequent lifting
> of less than ten pounds, and the job would be performed primarily in
> a seated position with total time standing and walking limited to two
> hours out of an eight-hour day.

(Tr. 225.)  Samalska testified that the hypothetical person would not be

able to perform Plaintiff's past work as Plaintiff performed it, but that the

hypothetical person would be able to perform the work required by

Plaintiff's position as a claims clerk as that job is performed in the national

economy. (Tr. 226.)  The ALJ then asked Samalska to consider whether

the hypothetical person would be able to perform Plaintiff's claims clerk job

as it is performed in the national economy if she were given the option of

switching from sitting to standing at least once every hour for a brief one or

two-minute period.  (Tr. 226.)  Samalska responded positively to this

hypothetical, but added that Plaintiff could not have done the claims clerk

job as it is performed in the national economy if she were required to have

the sit/stand option every ten minutes instead of once every hour for a brief

one-to-two-minute period.[2]  (Tr. 226.)  Further, Samalska testified that the

hypothetical person would not be able to perform the claims clerk job were

she to be given the ability to miss work at least three days each month on

an as-needed basis without providing advance notice.  (Tr. 227.)

## IV.    The ALJ's Findings and Decision

On May 23, 2007, the ALJ issued a Decision denying Plaintiff's application

for a period of disability and disability insurance benefits.  (Tr. 12-19.)  The ALJ

followed the sequential five-step procedure as set out in the regulations

governing an individual's application for disability benefits.  (Tr. 13-14.); *see* 20

C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The Eighth Circuit has summarized

these steps as follows: (1) whether the claimant is currently engaged in

"substantial gainful activity"; (2) whether the claimant suffers from a severe

impairment that "significantly limits the claimant's physical or mental ability to

perform basic work activities"; (3) whether the claimant's impairment "meets or

equals a presumptively disabling impairment listed in the regulations (if so, the

claimant is disabled without regard to age, education and work experience)";

(4) "whether the claimant has the residual functional capacity to perform his or

her past relevant work"; and (5) if the ALJ finds that the claimant is unable to

perform the past relevant work then the burden is on the Commissioner "to prove

---

[2]     Samalska also testified that Plaintiff's transferable skills acquired at the
claims clerk job could not be transferred to any other work allowing for a sit/stand
option every ten minutes.  (Tr. 227.)

that there are other jobs in the national economy that the claimant can perform."
*Fines v. Apfel*, 149 F.3d 893, 894-95 (8th Cir. 1998).

First, the ALJ found that Plaintiff has not engaged in substantial gainful
activity since April 30, 2004, the alleged onset date of Plaintiff's disability,
therefore meeting the requirement at the first step of the procedure.  (Tr. 14.)
Next, the ALJ found that Plaintiff has severe impairments including: osteoarthritis
of the left knee; degenerative changes of the lumber spine; morbid obesity; left
heel spur; left Achilles' insertional pain; a history of ventral hernia; and
fibromyalgia-type syndrome.  (Tr. 14.)  Based on these impairments the ALJ
determined that the second step of the procedure was satisfied.  (*Id.*)  Third, the
ALJ found that Plaintiff does not have an impairment or combination of
impairments that meets or medically equals one of the impairments listed in the
regulations, therefore requiring the ALJ to proceed to the fourth step of the
procedure.  (Tr. 15.)

With regard to the fourth step of the procedure, the ALJ made four
findings.  The ALJ found that Plaintiff has the residual functional capacity to lift
and carry 10 pounds or less occasionally, stand and/or walk 2 hours of an 8 hour
day, and sit 6 hours of an 8 hour day, allowing for brief one-to-two minute hourly
sit/stand options and changes of position.  (Tr. 15.)  The ALJ also found that
Plaintiff's "medically determinable impairments could reasonably be expected to
produce the alleged symptoms, but that the claimant's statements concerning the
intensity, persistence and limiting effects of these symptoms are not entirely

credible."  (Tr. 16.)  The ALJ next found that "[Plaintiff] is capable of performing

past relevant work as a claims clerk.  This work does not require the performance

of work-related activities precluded by the [Plaintiff's] residual functional

capacity."  (Tr. 18.)  Thus, the ALJ found that "[Plaintiff] has not been under a

disability, as defined by the Social Security Act, from April 30, 2004 through the

date of this decision."  (Tr. 18.)

## DISCUSSION

## I.    Standard of Review

Review by this Court is limited to a determination of whether the decision

of the Commissioner is supported by substantial evidence on the record as a

whole.  42 U.S.C. § 405(g); *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006).

"There is a notable difference between 'substantial evidence' and 'substantial

evidence on the record as a whole.'"  *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th

Cir. 1987).  Substantial evidence is "more than a mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotations

omitted); *see also Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001)

("Substantial evidence is less than a preponderance, but enough that a

reasonable mind might accept it as adequate to support a decision.").

"'Substantial evidence on the record as a whole,' . . . requires a more scrutinizing

analysis."  *Gavin*, 811 F.2d at 1199.  "The substantial evidence test employed in

reviewing administrative findings is more than a mere search of the record for

evidence supporting the [Commissioner's] findings." *Id.* In reviewing the administrative decision according to this standard, "'[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Id.* (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

In reviewing the record for substantial evidence, the Court may not substitute its own opinion for that of the ALJ. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The Court may not reverse the Commissioner's decision merely because evidence may exist to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994); *see also Woolf*, 3 F.3d at 1213 (concluding that the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding). Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Gavin*, 811 F.2d at 1199. The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

The claimant bears the burden of proving his or her entitlement to disability insurance benefits and supplemental security income under the Social Security Act. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Once the claimant has demonstrated that he or she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first

17

that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

## II.   Analysis of the ALJ's Decision

Plaintiff argues that there is not substantial evidence on the record as a whole to uphold the ALJ's decision and that she meets the requirements to receive disability benefits for the following reasons: (1) the ALJ did not give appropriate weight to the Plaintiff's description of her pain symptoms and the effect those symptoms had on her activities; (2) the ALJ did not give appropriate weight to the reports and opinions of Plaintiff's treating physician; and (3) the ALJ's decision that Plaintiff can perform her past relevant work is inconsistent with the evidence.  Defendant disagrees, particularly with Plaintiff's challenge to the weight given by the ALJ to the opinions of Dr. Jones regarding Plaintiff's impairments and the ALJ's credibility determinations regarding Plaintiff's description of her symptoms and impairments.  Defendant further argues that the testimony of the vocational expert provides substantial evidence to support the ALJ's findings that Plaintiff could return to her past relevant work as a claims clerk.

### A.   Treating Source

As an initial matter, Plaintiff contends that Dr. Jones qualifies as a "treating source" under the applicable federal regulations.  (*See* Doc. No. 17 at 1-2.)  A

"treating source" is the applicant's own physician, psychologist, or other

acceptable medical source who provides or has provided the applicant with

medical treatment or evaluation on an ongoing basis.  20 C.F.R. § 416.902.

However, it is unnecessary for this Court to determine whether Dr. Jones

qualified as a "treating source" because it appears from the ALJ's Decision that

the ALJ had, in fact, concluded that Dr. Jones qualified as such.  The ALJ

explained that he did not place controlling weight on Dr. Jones's March 9, 2006

Medical Opinion Re: Ability to Do Work-Related Activities (Physical).  (*See* Tr.

17.)  It would have been unnecessary for the ALJ to describe his reasons for

refusing to give controlling weight to Dr. Jones's opinion unless the ALJ had

already concluded that Dr. Jones qualified as a "treating source."  Based on the

record, this Court sees no reason to disagree with that implicit conclusion.

Therefore, to the extent Plaintiff contends that Dr. Jones should have been

considered a "treating source," Plaintiff's argument is moot.

### B.    Residual Functional Capacity Determination

Plaintiff challenges the ALJ's RFC finding by arguing that the ALJ failed to

give appropriate weight to Dr. Jones's reports and opinions, as well as to

Plaintiff's own description of her impairments and their effect on her activities.

(Doc. No. 12, Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") 6-10.)

### 1.    Dr. Jones's Medical Opinions

This Court first addresses Plaintiff's argument that the ALJ did not give

appropriate weight to Dr. Jones's opinions.  Specifically, the ALJ rejected, and

excluded from the RFC finding (Tr. 18), three of the recommendations of Dr. Jones: (1) that Plaintiff be permitted to walk around every 90 minutes for 0 minutes at a time (Tr. 191); (2) that Plaintiff be permitted to elevate her legs on a regular basis at work (Tr. 186); and (3) that Plaintiff be permitted to be absent from work about three times a month due to her impairments (Tr. 192). Plaintiff contends that the ALJ should not have rejected these opinions because they are consistent with the other medical evidence in the record and the restrictions they imposed on Plaintiff's work-related activities were related to Plaintiff's ongoing symptoms. Taking Plaintiff's argument to its logical conclusion, the ALJ then arguably should have given controlling weight to the opinion and incorporated the opinion's restrictions into the RFC finding. As discussed above, the ALJ instead determined that Dr. Jones's opinion was not entitled to controlling weight because it was inconsistent with earlier opinions and no new evidence existed to support the greater restrictions Dr. Jones's opinion imposed on Plaintiff's activities. (Tr. 17.)

"If a treating source's medical opinion about the nature and severity of the claimant's impairments is well-supported by medical evidence and is not inconsistent with other substantial evidence in the case, the treating source opinion is entitled to controlling weight." *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) (citing 20 C.F.R. § 416.927(d)(2)). If a treating source's opinion is not given controlling weight, other factors are considered to determine the weight it should be given. *See* 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), d(3)-(6).

First, Plaintiff contends that the ALJ superficially disregarded as "non-sensical" Dr. Jones's walking restriction and the opinion is best understood as a scrivener's error. (Pl.'s Mem. 8.) However, there is nothing in the record to suggest, as Plaintiff contends, that Dr. Jones made a scrivener's error in recommending that Plaintiff be permitted to walk around every 90 minutes for 0 minutes at a time. The doctor clearly circled the 90-minute-frequency option and the 0-minute-duration option on the March 9, 2006 form. Therefore, the Court cannot conclude that Dr. Jones simply made an error in completing the form.

The ALJ also concluded that the walking restriction was "not supported by objective findings." (Tr. 18.) Although Dr. Jones indicated that the limitations recommended were supported by medical findings that Plaintiff experiences severe pain in her left knee due to prolonged standing and her osteoarthritis (Tr. 191), no other opinion in the record suggests that walking of any duration would be beneficial for Plaintiff. To the contrary, the objective medical expert, Dr. Steiner, testified that upon diagnosis of Plaintiff's severe knee arthritis in August 2005, her medical record would support a limitation in the amount of time Plaintiff spent *on* her feet. (Tr. 222.) Thus, the ALJ was faced with inconsistent medical evidence in the record regarding the appropriate limitations to impose on Plaintiff's work-related activities. Though this Court could draw two inconsistent conclusions from the record on this point, this fact does not prevent the ALJ's rejection of the walking restriction from being supported by substantial evidence. *See Culbertson*, 30 F.3d at 939.

Therefore, this Court concludes that the ALJ's decision to not give controlling weight to this portion of Dr. Jones's March 9 opinion is supported by substantial evidence.  This does not end the inquiry however.  Though not given controlling weight, the March 9 opinion would still be entitled to some weight based on other factors.  *See* 20 C.F.R. §§ 416.927(d)(2)-(6) (listing factors including length of the treatment relationship and frequency of examination by the treating physician, nature and extent of the treatment relationship, relevant evidence presented in support of the medical opinion, consistency with the record as a whole, whether the opinion is from a specialist on the topic, and any other relevant factors).  The opinion provides only minimal support for the restrictions imposed by generally referring to Plaintiff's arthritic condition and severe left knee pain.  This minimal support does not entitle the opinion to significantly greater weight.  *See* § 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [will be given to] that opinion.").  There was, for instance, no explanation of why Plaintiff's severe knee pain and arthritis required her to walk around every 90 minutes for an undefined period of time.  Under these circumstances, this Court concludes that it was appropriate for the ALJ to discount Dr. Jones's March 9 opinion's requirement that Plaintiff be allowed to walk every 90 minutes for an undefined period of time.

Second, Plaintiff argues that the ALJ should have accepted, and incorporated into the RFC finding, Dr. Jones's opinion that Plaintiff be permitted

to elevate her legs on a regular basis while at work.  (*See* Pl.'s Mem. 11.)  The

basis for this recommendation and the other recommendations in the October 25,

2005 opinion are Plaintiff's obesity, left knee pain, sciatica, fibromyalgia, and heel

pain.  (Tr. 186.)  However, Dr. Jones's October 25, 2005 opinion, a certification

that clears Plaintiff to return to light work, is the only medical opinion in the record

that recommends leg elevation.  *See* 20 C.F.R. § 416.927(d)(2)(4) ("Generally,

the more consistent an opinion is with the record as a whole, the more weight we

will give that opinion.").  For instance, the ALJ had before him an opinion from

Dr. Ward R. Jankus, dated August 10, 2005, that discussed Plaintiff's

impairments in great detail, yet failed to recommend leg elevation.  The ALJ also

found elevation of the legs unnecessary because Dr. Steiner, the medical expert

at the hearing, "noted . . . the lack of lower extremity edema to warrant the

necessity of elevation of the legs on a regular basis at work."  (Tr. 18.)  Based on

this evidentiary inconsistency, it was appropriate for the ALJ to refuse to give

controlling weight to Dr. Jones's leg-elevation recommendation.  *See* 20 C.F.R.

§ 416.927(d)(2) (granting controlling weight to a treating source's opinion unless

it is inconsistent with other substantial evidence in the case).

Third, Plaintiff argues that the ALJ should have accepted, and thus

incorporated into his RFC finding, Dr. Jones's opinion that Plaintiff's impairments

or treatment would cause her to be absent from work about three times a month.

(Tr. 192.)  The ALJ concluded that this opinion "is not consistent with the

[Plaintiff's] daily activities of living in a recreational vehicle with her husband

traveling to and from Texas and California." (Tr. 18.)  This conclusion is rather

puzzling, as Plaintiff's traveling needs[3] are completely irrelevant to Dr. Jones's

opinion about Plaintiff's need to miss work about three times a month.  However,

no other treating or evaluating medical source imposed a restriction requiring

Plaintiff to miss three days of work per month based on her impairments.

Further, the impairments on which Dr. Jones based this restriction—severe left

knee pain and osteoarthritis—were the same impairments that existed at the time

other physicians recommended less limiting restrictions.  (*See* Tr. 133, 165-66,

172-75, 186.)  For these reasons, the ALJ's more general observation that the

March 9, 2006 opinion is "not consistent with earlier opinions and there is no new

evidence to support the changes" is supported by substantial evidence, and it

was appropriate for the ALJ to not give this medical opinion controlling weight.

The ALJ also properly discounted this restriction because of its inconsistency

with the objective medical evidence in the record, *see* 20 C.F.R. § 416.927(d)(2),

and because it was accompanied by only minimal evidence to support it, *see* 20

C.F.R. § 416.927(d)(3).

Having weighed and considered the limitations recommended in Dr.

Jones's opinions along with the other medical evidence in the record, this Court

---

3       The Court notes that the Plaintiff explained that she was required to travel
to and from Texas and California due to complications with her fibromyalgia pain
symptoms in cold weather.  (Tr. 217.)

concludes that the ALJ's RFC findings are supported by substantial evidence on the record as a whole.

### 2.     Plaintiff's Description of Impairments

Plaintiff challenges a credibility determination made by the ALJ when the ALJ discounted Plaintiff's description of her own impairments and the limitations they impose on her activities.  An ALJ's decision to discredit an applicant's subjective complaints must be supported by substantial evidence.  *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003).  When making a credibility determination based on an applicant's subjective complaints, the ALJ must consider the applicant's "daily activities; the duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions."  *Id.* (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and 20 C.F.R. § 404.1529(c)(3)). "Additional factors include treatments, other than medication, that the claimant has used to relieve pain or other symptoms, and any other measures that the claimant has used to relieve pain and other symptoms."  *Id.*  "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [a reviewing court] will defer to its judgment even if every factor is not discussed in depth." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her "allegations of disabling pain and incapacitating limitations are not consistent with

25

or supported by the objective medical record of treating and examining

physicians."[4]  (Tr. 16.)  After discussing the medical evidence in the record, the

ALJ further explained:

> [Plaintiff] has undergone extensive workup of her multiple medical
> problems without identification of clear etiology for her problems.
> The undersigned notes steady but no contemporaneous medical
> evidence to support her allegations of significant sitting problems.
> The claimant did not allege such problems to her treating providers.
> She was able to sit throughout her hearing without problems.  She
> continues to remain fairly active performing a wide range of
> household chores and traveling to and from California and Texas
> with her husband in the recreational vehicle in which they reside.
> She uses no strong pain medications.

(Tr. 18.)

It was permissible for the ALJ to consider Plaintiff's demeanor during the

hearing, but it would have been inappropriate for the ALJ to have based his

decision entirely on his observations of Plaintiff's demeanor during the hearing.

*See  Cline v. Sullivan*, 939 F.2d 560, 567-68 (8th Cir. 1991) ("An ALJ is permitted

to take notice of a claimant's demeanor during an administrative hearing,

however the ALJ is not free to reject a claimant's credibility on account of the

---

[4]     Title 20, section 404.1529(a) of the Code of Federal Regulations provides:

> [S]tatements about your pain or other symptoms will not alone
> establish that you are disabled; there must be medical signs and
> laboratory findings which show that you have a medical
> impairment(s) which could reasonably be expected to produce the
> pain or other symptoms alleged and which, when considered with all
> of the other evidence (including statements about the intensity and
> persistence of your pain or other symptoms which may reasonably
> be accepted as consistent with the medical signs and laboratory
> findings), would lead to a conclusion that you are disabled.

claimant's failure to sit and squirm during the hearing."). It does not appear, however, that the ALJ based his credibility determination entirely on Plaintiff's ability to sit through the hearing.

In addition to Plaintiff's demeanor at the hearing, the ALJ based his decision to discredit Plaintiff's description of her own impairments on her daily activities and her ability to travel across the country, as well as the ALJ's perceived inconsistency of those activities with Plaintiff's description of disabling pain. This was an appropriate factor to weigh in assessing Plaintiff's credibility. *See Dunahoo*, 241 F.3d at 1038 (noting that description of disabling pain by claimant was inconsistent with daily activities including "getting up, eating, reading, cleaning the house, making the bed and doing dishes with the help of her husband, making meals, visiting with friends, and occasionally shopping and running errands"). This Court would not, however, characterize Plaintiff's situation as one in which she "remains fairly active." Though Plaintiff continues to participate in some household chores with the assistance of her husband, and can occasionally go to the grocery store to purchase food, her description of these activities is one of daily struggle. (*See* Tr. 216, 218-20.) Nor is Plaintiff's explanation of her need to live in a recreational vehicle due to her inability to care for a conventional home explicitly contradicted by any evidence in the record, though the ALJ characterized it as inconsistent with the objective medical evidence.

There is, however, evidence to support the ALJ's credibility determination. For instance, the ALJ based his finding in part on the fact that Plaintiff uses no strong pain medication.  Despite attempting other pain management techniques, Plaintiff appears to have taken no pain medication since the last drug she was prescribed was discontinued.  (*See* Tr. 87.)  There is also evidence that one physician "[o]ffered pain management, but [Plaintiff] refuse[d]" to take it.  (Tr. 151.)  This was an appropriate factor for the ALJ to consider.  *See Dixon*, 353 F.3d at 605.  In addition, the Dr. Steiner concluded that the medical evidence in the record showed that Plaintiff's impairments would not support a restriction permitting her to move from sitting to standing at will, (Tr. 223)  This conclusion provides support for the ALJ's conclusion that there was steady but no contemporaneous medical evidence supporting Plaintiff's allegations of significant sitting problems (Tr. 18).  Despite Plaintiff's apparent difficulties as a result of her physical impairments, this Court concludes that there is substantial evidence on the record as a whole to support the ALJ's credibility determination. *See Dunahoo*, 241 F.3d at 1038 (noting that deference to an ALJ's decision to discredit a claimant's description of her own impairments is appropriate where the ALJ provides a good reason for such a credibility determination).

### C.    Past Relevant Work Determination

Finally, Plaintiff argues that the ALJ's decision that Plaintiff can perform her past relevant work is inconsistent with the evidence.  (Pl.'s Mem. 10-11.)  Plaintiff contends that the ALJ's finding was inconsistent with the evidence because "an

applicant's past relevant work is defined by the regulations as work that the applicant has done within the past 15 years that was substantial gainful activity and lasted long enough for the applicant to learn and adopt the necessary skills." (*Id.* at 11.)  Plaintiff also argues that "[t]he ALJ's finding that [Plaintiff] can perform similar jobs in the national economy is tenable only if you ignore almost all of [Plaintiff's] testimony and the findings of her medical providers." (*Id.*)  Defendant argues that the vocational expert's testimony that Plaintiff could perform Plaintiff's past claims clerk job as it is generally performed in the national economy provides substantial evidence for the ALJ's past-relevant-work finding.  (Doc. No. 15, Def.'s Mem. in Supp. of Mot. for Summ. J. 12-13.)

The ALJ may take testimony from a vocational expert to evaluate whether a claimant is capable of performing past relevant work.  *Wagner v. Astrue*, 499 F.3d 842, 853-54 (8th Cir. 2007) (citing 20 C.F.R. § 404.1560(b)(2)).  This type of testimony from a vocational expert can address whether a claimant is capable of performing her previous work as actually performed or as generally performed in the national economy.  20 C.F.R. § 404.1560(b)(2).  "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question."  *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

The vocational expert testified that the hypothetical person would be capable of performing Plaintiff's past relevant work as a claims clerk as that job is performed in the national economy.  (Tr. 225-26.)  The ALJ relied on this

testimony in finding that Plaintiff could perform her past relevant work as it is generally performed in the national economy.  (Tr. 18.)  To the extent that Plaintiff argues it was inappropriate for the ALJ to rely on the vocational expert's testimony regarding Plaintiff's past relevant work as performed in the national economy, Plaintiff's argument must fail.  *See Wagner*, 499 F.3d at 854 (rejecting claimant's argument that it was inappropriate for the ALJ to rely on a vocational expert to evaluate claimant's ability to perform past relevant work as it is performed in the national economy); *see also* 20 C.F.R. § 404.1560(b)(2).

Plaintiff, however, also appears to argue that the vocational expert's testimony about Plaintiff's ability to perform such work does not constitute substantial evidence because the ALJ's hypothetical to the vocational expert excluded the restrictions that Plaintiff be able to elevate her feet regularly and miss work three times each month, as well as Plaintiff's alleged difficulties with sitting.  (Pl.'s Mem. 11.)  The ALJ asked the vocational expert whether any of Plaintiff's past work would be possible for a hypothetical person close in age to Plaintiff with a high-school education and with Plaintiff's skilled work history, restricted to lifting only 10 pounds occasionally and frequent lifting of less than ten pounds, and who performed the job primarily in a seated position (standing for no more than 2 hours out of an 8-hour day) but with the ability to shift from standing to sitting for a short period once every hour.  (Tr. 225-26.)  These limitations were the same limitations that the ALJ determined comprised Plaintiff's RFC.  (Tr. 15.)  As discussed above, this Court has concluded that the

ALJ's RFC finding was supported by substantial evidence.  As a result, the ALJ's hypothetical to the vocational expert was proper, and, in turn, the vocational expert's testimony based on that hypothetical constitutes substantial evidence. *See Pickney*, 96 F.3d at 296.  Therefore, this Court concludes that the ALJ's finding that Plaintiff could perform her past relevant work as a claims clerk as that position is generally performed in the national economy is supported by substantial evidence on the record as a whole.

## RECOMMENDATION

 For the reasons stated, this Court recommends that:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 11) be **DENIED**;

2.      Defendant's Motion for Summary Judgment (Doc. No. 14) be **GRANTED**;

3.      The decision of the Commissioner of Social Security be **AFFIRMED**; and

4.      This case be **DISMISSED WITH PREJUDICE**.

Date: December 18, 2008

*s/Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by January 5, 2009, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a

de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.